UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                              Criminal Case No. 17-20185

Gary Hill and Monique Dunbar,

                                                   Sean F. Cox
    Defendants.                         United States District Court Judge

_____/

## OPINION AND ORDER

Defendants Gary Hill and Monique Dunbar have filed motions to suppress the search warrant in this case, challenging the validity of the underlying affidavit. They also seek a *Franks* hearing. Additionally, Defendant Dunbar has filed motions to dismiss the indictment and for severance of Defendants at trial. For the reasons below, the Court **DENIES Defendant Hill's Motion to Suppress and Defendant Dunbar's Motion to Suppress and Motion to Dismiss**. The Court also **DENIES Defendant Dunbar's Motion to Sever WITHOUT PREJUDICE**.

### BACKGROUND

Defendants Dunbar and Hill have been in a relationship for about three to five years. Hill would spend the night with Dunbar at her residence, which is located at 25417 St. James, Southfield, Michigan, about one time per week and sometimes on weekends. Hill had a key to the residence and sometimes gave Dunbar money for rent.

On January 29, 2017, FBI Task Force Officer Craig Fitzpatrick served as affiant for an affidavit in support of an application for a search warrant for Dunbar's residence. Fitzpatrick has over 22 years of experience in the investigation and prosecution of individuals involved in drug

trafficking. The following facts are taken from the warrant affidavit.

In March 2016, the FBI, based on information from a confidential source, began investigating a narcotics trafficking network involving Defendant Hill, Larry Stewart, and Leroy Hooker. *Id*. at ¶ 7. On November 3, 2016, surveillance observed Hooker give Stewart a dark colored shopping bag in a Toledo mall parking lot. After getting the bag, Stewart drove to Hill's residence in Lathrup Village, Michigan. *Id*. at 8. Upon arriving, Stewart took the bag inside. *Id*. On November 17, 2016, Stewart again traveled from Toledo to Hill's Lathrup Village residence and delivered another bag. *Id*. at ¶ 11.

On December 2, 2016, Hill and Stewart met at Somerset Mall and went to Hill's Detroit condominium. *Id*. at ¶ 12. When Stewart left, he loaded an item into his trunk and traveled to Hooker's location in Toledo. *Id*. Stewart removed a bag from his trunk and entered Hooker's house. *Id*. Shortly thereafter, Hooker exited his residence, went to his trunk, and departed. *Id*. Law enforcement stopped Hooker and seized a duffle bag containing six kilograms of suspected cocaine and a large quantity of suspected heroin from the trunk of the vehicle. *Id*.

On January 23, 2017, Hill purchased a prepaid cellphone under an alias with an address not associated with him. *Id*. at ¶ 20.

On January 27, 2017, Hill arrived at the St. James residence. *Id*. at ¶ 22. At 1:27 p.m., Hill exited the premises carrying a large weighted black garbage bag and placed it into the trunk of his vehicle. *Id*. Hill drove to a Rite Aid parking lot in Royal Oak, where he met with another individual waiting in a Ford Edge. *Id*. Hill exited his vehicle and went and opened his trunk. *Id*. He removed "two sandwich sized clear plastic baggies containing a white substance from a black bag located inside the truck [sic]." *Id*. He placed the bags in his coat pocket and entered the

2

passenger seat of the Ford Edge. *Id*. Shortly thereafter, Hill exited the vehicle carrying a white grocery bag wrapped tightly around what appeared to be a solid object. *Id.* Hill placed this bag in the trunk of his vehicle. *Id*.

On January 28, 2017, Hill was identified by GPS vehicle tracker at the St. James address. Def. Ex. A., ¶ 26. Hill then left and drove to a location which law enforcement believed to be a known meet spot for narcotics transactions. *Id*.

Based on the above, the affiant requested a warrant authorizing a search of the St. James residence. On January 29, 2017, Magistrate Judge Patti authorized the search warrant. The FBI executed the warrant the next day and seized a kilogram of cocaine, scales, and approximately $86,000.

On March 29, 2017 Defendants were indicted on one count of possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1). Defendant Hill has filed a Motion to Suppress the Search Warrant (Doc. # 29). Defendant Dunbar has filed a Motion to Suppress the Warrant, a Motion to Dismiss the Indictment, and a Motion to Sever (Doc. # 28 and 30). The Government has responded (Doc. # 31 and 32) and the Court held a hearing on November 17, 2017.

## ANALYSIS

### I. Whether Defendants are Entitled to a *Franks* Hearing

Defendants have filed motions to suppress the search warrant, arguing that the warrant affidavit contains false statements and that without those statements the affidavit lacks probable cause. Defendants focus on paragraph 22 of the affidavit. Specifically, they assert that the paragraph falsely states that Hill exited the targeted premises with a weighted garbage bag and that he pulled two sandwich sized clear plastic baggies from a back bag located inside the trunk.

3

Defendants also point out some minor inconsistencies between paragraph 22 and the FBI's notes detailing the surveillance of Hill. The notes do not describe the garbage bag that Hill was carrying when he exited the St. James residence as "weighted." Def. Ex. C. The notes also do not reference the black bag when describing that Hill removed the two plastic baggies from the trunk. *Id*. Finally, Dunbar's reply brief refers to several "material omissions" from the affidavit.

There is a presumption of validity with respect to the affidavit supporting the search warrant. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). To obtain an evidentiary hearing on a challenge to the affidavit, a defendant must make a "substantial preliminary showing" that the warrant affidavit included a false statement made knowingly and intentionally, or with reckless disregard for the truth, and that the allegedly false statement was necessary to the finding of probable cause. *Id*. at 155-56. "A defendant who challenges the veracity of statements made in an affidavit that formed the basis for a warrant has a heavy burden." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). The defendant's challenge "must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Franks*, 438 U.S. at 171. Allegations of deliberate falsehood or reckless disregard for the truth must be accompanied by an offer of proof. *Id*. "Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Id*.

As an initial matter, the Court notes that only Defendant Hill has submitted an offer of proof in support of his request for a *Franks* hearing. But Defendant Dunbar has challenged the same affidavit and, at the hearing, concurred in Hill's request for a *Franks* hearing. Therefore, the Court will consider Hill's offer of proof with respect to both Defendants.

The offer of proof asserts that an evidentiary hearing will show that the FBI agents that

4

conducted the surveillance of Hill will testify that the challenged statements in paragraph 22 of the affidavit did not occur. Defendants' briefs also emphasize the inconsistencies between the affidavit and the surveillance notes.

Defendants have not met their heavy burden under *Franks*. The offer of proof makes nothing more than conclusory allegations that the affidavit includes false statements. Defendants have not provided any witness statements, let alone affidavits, to the Court. While there are some inconsistencies between the FBI surveillance notes and the affidavit, Defendants have not shown how these minor differences, i.e., the omission of the word "weighted" and the absence of a reference to the black bag in the trunk, demonstrate that the statements in paragraph 22 were deliberate falsehoods or made with reckless disregard for the truth.[1] Defendants also have not shown that any omissions from the affidavit were made deliberately and recklessly and that those omissions undermined the showing of probable cause. *United States v. Carpenter*, 360 F.3d 591, 596-97 (6th Cir. 2004). Instead, any differences and minor omissions are attributable to an innocent mistake or negligence, which are insufficient to warrant a hearing. *Franks*, 438 U.S. at 171. Therefore, Defendants have failed to make a substantial preliminary showing and the Court declines to hold a *Franks* hearing.

## II. Whether the Affidavit Supports a Finding of Probable Cause

Defendants have not argued in the alternative that the affidavit as a whole does not support a finding of probable cause. Even if they had, the affidavit supports a finding of probable cause sufficient to support the warrant. To demonstrate probable cause, the affidavit

---

[1] Even if this were the case, when the statement that the bag was "weighted" and the reference to the black bag in the trunk are set to one side, there remains sufficient content in the affidavit to support a finding of probable cause. *United States v. Mastromatteo*, 538 F.3d 535, 545 (6th Cir. 2008). Thus, no hearing is required. *Id*.

must "indicate a 'fair probability' that evidence of a crime will be located on the premises of the proposed search." *United States v. Jenkins*, 396 F.3d 751, 761 (6th Cir. 2005). The affidavit must also establish a "proper nexus, a connection between 'the criminal activity observed and the [residence to be searched.]" *United States v. Moore*, 661 F.3d 309, 314 (6th Cir. 2011).

The facts in the affidavit described Hill leaving the St. James residence with a garbage bag that he placed in his trunk. Hill then arrived at the Rite Aid parking lot, where he removed two plastic baggies containing suspected controlled substances. He entered a waiting vehicle and then exited carrying a white grocery bag, which he placed in the trunk. These facts describe an apparent narcotics transaction by Hill that originated at the St. James residence. The affiant supplemented these facts with his averment that in his experience drug traffickers store controlled substances within their residences.

The above facts "indicate[d] a 'fair probability' that evidence of a crime will be located on the premises of the proposed search." *Jenkins*, 396 F.3d at 761. They also established a sufficient nexus between the alleged criminal activity and the St. James residence. *See United States v. Miggins*, 302 F.3d 384, 393 (6th Cir. 2002). Finally, there is no indication that Magistrate Judge Patti's probable cause determination was arbitrarily made and it is therefore entitled to great deference. *United States v. Miller*, 314 F.3d 265, 268-69 (6th Cir. 2002). Accordingly, the Court denies Defendants' Motions to Suppress.

### III. Dunbar's Motion to Dismiss the Indictment

Dunbar has moved to dismiss the indictment, arguing that it is defective because it was based on Hill's conduct and because it lacks specificity and/or fails to state an offense in the absence of a principal offender and/or a conspiracy charge.

Under Fed. R. Crim. P. 12(b)(3), a defendant may challenge a defect in the indictment. The interpretation of the indictment is generally limited to its four corners. *United States v. Ferguson*, 681 F.3d 826, 831 (6th Cir. 2012). An indictment must contain the elements of the charged offense, fairly inform the defendant of the charges faced, and enable defendant to plead double jeopardy in a subsequent prosecution for the same offense. *Hamling v. United States*, 418 U.S. 87, 117 (1974). Generally, an indictment is sufficient if it states the offense using the words of the statute itself and includes a statement of facts and circumstances that will inform the accused of the specific offense for which she is charged. *Id*.

Looking to the four corners of the indictment, there is no defect justifying dismissal. The indictment contains the elements of the charge and identifies the person Dunbar aided and abetted. It also includes the date and nature of the offense. Dunbar's assertion that the Government will be unable to prove its case at trial does not render the indictment invalid. Therefore, the Court denies her motion to dismiss.

### IV. Dunbar's Motion to Sever

Finally, Dunbar moves for the severance of Defendants at trial. She generally asserts that a joint trial would deny her right to a fair trial because the jury will not be able to make a reliable judgment about guilt or innocence, the jury will consider evidence that is not admissible against her, and her right to remain silent and/or right to confront witnesses will be prejudiced.

Rule 14 of the Federal Rules of Criminal Procedure allows the Court to sever Defendants' trial if joinder appears to prejudice a defendant. "[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment

about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). "When a defendant seeks a severance, he has a heavy burden of showing specific and compelling prejudice . . . ." *United States v. Harris*, 9 F.3d 493, 500 (6th Cir. 1993).

At this stage, Dunbar has not met this heavy burden. She has made only cursory allegations that she would be prejudiced by a joint trial. There is presently no indication that a jury could not reasonably be expected to sort out the evidence, *see United States v. Crotinger*, 928 F.2d 203, 206 (6th Cir. 1991), or that a joint trial would compromise any of Dunbar's trial rights. Dunbar is not entitled to severance merely because she may have a better chance of acquittal in a separate trial. *Zafiro*, 506 U.S. at 540. Therefore, Dunbar has not shown specific and compelling prejudice and the Court will deny her motion. But, because trials are dynamic and the case may develop in such a manner that it becomes appropriate for Dunbar to raise this motion at a later time, the Court will deny the Motion to Sever without prejudice.

## CONCLUSION AND ORDER

For the reasons above, Defendants have not made the substantial preliminary showing necessary to mandate a *Franks* hearing and the warrant affidavit supports a finding of probable cause. Therefore, the Court **DENIES** Defendants' Motions to Suppress. The Court also **DENIES** Dunbar's Motion to Dismiss because there is no defect in the indictment justifying dismissal. Finally, because Dunbar has not shown specific and compelling prejudice resulting from a joint trial, the Court **DENIES** her Motion to Sever **WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

s/Sean F. Cox  
Sean F. Cox  
United States District Judge

Dated: November 27, 2017

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                             Criminal Case No. 17-20185

Gary Hill and Monique Dunbar,

                                            Sean F. Cox
    Defendants.                     United States District Court Judge

_____/

**PROOF OF SERVICE**

       I hereby certify that a copy of the foregoing document was served upon counsel of record on November 27, 2017, by electronic and/or ordinary mail.

                                                     s/Jennifer McCoy
                                                     Case Manager